1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   DEOVANTE L. GUY,                        Case No. 20-cv-02027-BAS-BLM
12                         Plaintiff,        **ORDER:**
13          v.
                                             **(1) GRANTING IN PART AND**
14   MATTHEW LORENZEN, *et al.*,             **DENYING IN PART DEFENDANTS'**
                                             **MOTION TO DISMISS (ECF No. 6);**
15                         Defendants.
16
                                             **(2) DENYING DEFENDANTS'**
17                                           **REQUEST FOR A STAY; AND**
18
                                             **(3) GRANTING PLAINTIFF LEAVE**
19                                           **TO AMEND THE COMPLAINT**
20
21
22
23
24
25
26
27
28

This action arises from a tragic sequence of events which led to Plaintiff Deovante L. Guy being severely injured by oncoming traffic while being detained by a police officer in the middle of the road. Plaintiff brought the present action against the City of San Diego, the arresting officer, and other officers on the scene of the incident, raising state-law claims and federal civil rights claims. The Court is asked to decide whether parts of Plaintiff's Complaint should be dismissed for failure to state a claim under the doctrine of qualified immunity and under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court is also asked to decide whether any remaining claims require an abstention under *Younger v. Harris*, 401 U.S. 37 (1971).

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. (ECF No. 6.) The Court **DENIES** Defendants' request to stay this action under the *Younger* doctrine. The Court **GRANTS** Plaintiff leave to amend his pleading.

## BACKGROUND

One early morning before sunrise in February 2019, officers of the San Diego Police Department ("SDPD") received a report of vandalism at a convenience store near the Rosecrans Street and Midway Drive intersection in San Diego, California. (Second Am. Compl. ("SAC") ¶ 13.) Multiple police vehicles carrying SDPD officers descended on Rosecrans Street. *Id.* The officers identified Plaintiff Deovante L. Guy as the suspect of the vandalism. (*Id.* ¶ 14.)

Guy walked past the SDPD vehicles, which were parked on the well-lit side of Rosecrans Street. (*Id.* ¶¶ 15–16.) Guy headed away from the SDPD vehicles and crossed four lanes across Rosecrans street, towards a raised median. (*Id.* ¶¶ 17–18.) Officer Matthew Lorenzen followed Guy. (*Id.* ¶ 17.) Guy arrived at the other side of the street, where he was met with a gated fence. (*Id.* ¶ 18.)

Unable to go through the locked gate, Guy turned around and started to walk back towards the SDPD vehicles. (*Id.* ¶¶ 19, 21.) Officer Lorenzen followed him. (*Id.* ¶ 21.)

- 2 -

The side of the street where Guy was walking was dark, nearly pitch black, and the lights from the police cars parked on the other side of the street further impaired visibility. (*Id.* ¶ 20.) As Guy approached the middle of the second lane, Officer Lorenzen grabbed Guy's wrist and twisted his arm behind his back. (*Id.* ¶ 21.) Guy did not resist, pull away, or struggle at any time and let Officer Lorenzen hold him down to the ground. (*Id.* ¶¶ 22–23.) Officer Lorenzen pinned Guy down with a knee on his back. (*Id.* ¶ 24.)

Around 4:45 a.m., an SUV drove into Officer Lorenzen and over Guy's body. (*Id.*) ¶ 25. The SUV was driven within the speed limit. (*Id.* ¶ 28.) As a result of the crash, Guy was severely injured, and his blood drenched the street. (*Id.* ¶ 26.) Other SDPD officers on the scene ran over to check on Lorenzen but disregarded Guy's medical needs. (*Id.* ¶ 29.)

Guy was transported to a hospital in an ambulance. (*Id.* ¶¶ 29–30.) Guy was nearly dead when he arrived at the hospital, and the doctors recommended taking him off life support. (*Id.* ¶ 30.) His injuries included, among others, internal bleeding, internal decapitation, torn organs, broken bones, and lacerations. (*Id.* ¶ 31.) Guy survived but remains severely injured.

Guy, by and through his guardian ad litem Quintasia Walker, filed an action for damages in San Diego Superior Court against Officer Lorenzen, Doe Officers, the City of San Diego, the SDPD ("San Diego Defendants"), and the driver of the SUV. (ECF No. 1-2.) The San Diego Defendants removed the action to federal court. (ECF No. 1.) Guy filed an amended pleading, entitled "Second Amended Complaint."[1] (SAC, ECF No. 4.) The driver of the SUV later settled with Plaintiff. (*See* Order, ECF No. 16.) The San Diego Defendants filed a motion to dismiss the SAC for failure to state a claim ("the Motion"). (ECF No. 6.) Guy filed an opposition (ECF No. 12) and San Diego Defendants a reply (ECF No. 14). The Motion is ripe for the Court's decision.

---

[1] Guy had amended his complaint once in state court before the action was removed to federal court. (ECF No. 1-2.)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). In assessing a motion to dismiss, the court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds by*, 275 F.3d 1187 (9th Cir. 2001). It is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated

the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**ANALYSIS**

**I.     Qualified Immunity**

Defendants argue that the doctrine of qualified immunity protects Officer Lorenzen from being held liable for Plaintiff's Fifth Cause of Action for unlawful detention under the Fourth Amendment and Seventh, Eighth, and Ninth Causes of Action for the violation of substantive due process under the Fourteenth Amendment.

Under the qualified immunity doctrine, government officials acting in their official capacities are immunized from civil liability unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations omitted).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation and internal quotation marks omitted).  "To determine whether an officer is entitled to qualified immunity, the Court asks, in the order it chooses, (1) whether the alleged misconduct violated a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018) (cleaned up) (quoting *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013)).

**A.     Violation of a Constitutional Right**

**1.     Unreasonable Detention and Arrest (Fifth Cause of Action)**

Defendants argue that Plaintiff has not adequately alleged a violation of the Fourth Amendment in connection with his Fifth Cause of Action for "Unreasonable Search and Seizure—Improper Detention and Arrest."  An officer may make a brief investigatory stop if the stop is supported by articulable facts leading to a reasonable suspicion that the person has been, is, or is about to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–

- 5 -

22 (1968).  Arrest without a warrant requires probable cause, a higher standard than the reasonable suspicion standard applicable to a *Terry* stop.  *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011). Courts must consider the totality of circumstances known to the arresting officers to determine the existence of reasonable suspicion and probable cause.  *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996) (reasonable suspicion); *Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010) (citation omitted) (probable cause), *cert. denied*, 562 U.S. 1135 (2011).

The SAC does not contain any facts as to whether or not the detention of Plaintiff was supported by reasonable suspicion or probable cause.  The relevant part of the SAC merely states that "SDPD Officers identified GUY as the suspect in the vandalism incident at the 7-11."  (SAC ¶ 14.)  Other factual allegations concern the events that followed after the officers identified Plaintiff.  The Court concludes that the SAC does not plausibly state a violation of the Fourth Amendment by unreasonable detention or arrest.

Plaintiff argues that his lack of resistance during the arrest, as alleged in the SAC, supports his claim for unlawful detention.  The cases on which Plaintiff relies concern constitutional violations arising from the use of excessive force: *Graham v. Connor*, 490 U.S. 386 (1989) (§ 1983 action challenging use of excessive force); *Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002) (same); *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (same).  Plaintiff raises a separate cause of action for "Unreasonable Search and Seizure-Excessive Force."  (SAC ¶¶ 89–99 (Sixth Cause of Action).)  Defendants do not seek to dismiss that cause of action in the present Motion.  Therefore, the Court need not reach whether the SAC contains enough facts to support a plausible claim for a violation of the Fourth Amendment by use of excessive force.

If Plaintiff's theory is that the detention of Plaintiff violated the Fourth Amendment because Officer Lorenzen acted in disregard of Plaintiff's safety, that is within the scope of the Fourteenth Amendment.  Plaintiff's Fourteenth Amendment claim will be discussed *infra*, Part I.A.2.

In sum, the Court dismisses Plaintiff's Fifth Cause of Action under Rule 12(b)(6) because the SAC does not state a plausible claim of unreasonable detention and arrest.

### 2. Substantive Due Process (Seventh, Eighth, and Ninth Causes of Action)

Defendants seek to dismiss Plaintiff's Fourteenth-Amendment causes of action arising from Lorenzen and other officers' failure to protect Plaintiff. In general, the Due Process Clause of the Fourteenth Amendment does not obligate a state actor to assume an affirmative duty "to protect the life, liberty, and property of its citizens against invasion by private actors" or offer governmental aid even where the aid is necessary to secure life. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989); *accord L.W. v. Grubbs* ("*Grubbs I*"), 974 F.2d 119, 121 (9th Cir. 1992) ("As a general rule, members of the public have no constitutional right to sue [public] employees who fail to protect them against harm inflicted by third parties."). "This general rule is modified by two exceptions: (1) the 'special relationship' exception; and (2) the 'danger creation' exception." *Grubbs I*, 974 F.2d at 121. Plaintiff argues that both exceptions apply in this case and Defendant Officers were required to protect or render aid to Plaintiff.

#### a. "Special Relationship" Exception

The first exception to the lack of duty to protect exists where "the state has created a special relationship with a person, as in the case of custody or involuntary hospitalization." *Grubbs I*, 974 F.2d at 121. This "special relationship exception" is created when "the State takes a person into its custody and holds him there against his will." *DeShaney*, 489 U.S. at 199–200. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause . . . ." *Id.* at 200. The factors relevant to the existence of a "special relationship" include:

(1) whether the state created or assumed a custodial relationship toward the plaintiff; (2) whether the state affirmatively placed the plaintiff in a position of danger; (3) whether the state was aware of a specific risk of harm to the plaintiff; or (4) whether the state affirmatively committed itself to the protection of the plaintiff.

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 700 (9th Cir. 1988). Where such a special relationship exists, "the state has a duty to 'assume some responsibility for [the person's] safety and general well-being' because it has 'render[ed] him unable to care for himself.'" *Campbell*, 671 F.3d at 843.

The facts alleged in the SAC are enough to find that the elements of a special relationship exception were met. Officer Lorenzen created a custodial relationship when he held Plaintiff down by placing his knee on Plaintiff's back. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (examining whether the defendant's "freedom to depart was restricted in any way" to determine the existence of a custodial relationship). The allegation that Officer Lorenzen held Plaintiff face-down in the middle of a road allows for a reasonable inference that Officer Lorenzen affirmatively placed Guy in a position of danger. It can also be reasonably inferred from the alleged time (before sunrise), location (mutli-lane road), and circumstances (lowered visibility) that a rational officer would have been aware of the risk that a third-party driver may fail to see the officer or Plaintiff and injure both. The Court concludes that the SAC provides enough facts to plausibly state that the special relationship exception applies.

The next question is whether the SAC offers enough facts to state a plausible claim that San Diego Defendants failed to protect Plaintiff. According to the SAC, "numerous police officer[s] on the scene ran over to check on LORENZEN, disregarding the medical needs of GUY and left GUY for dead in the middle of the street." (SAC ¶ 29.) Preceding that allegation is an allegation that after the SUV hit Guy, "GUY's body was lifeless, and GUY's blood drenched the scene of the collision." (*Id.* ¶ 26.) These allegations, read in the light most favorable to Plaintiff, allow the Court to draw a plausible inference that the officers failed to fulfill their duty to protect Guy by rendering adequate medical aid.

### b. "State-Created Danger" Exception

The second exception is applicable when a state officer "'affirmatively places the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citing *DeShaney*, 489 U.S. at 197). "The employees must have also acted with 'deliberate indifference' to a 'known or obvious danger.'" *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018) (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011)).

### i. Affirmative Act.

To plausibly state that the SDPD officers affirmatively placed Plaintiff in danger, Plaintiff must allege that the SDPD officers left Plaintiff "in a situation that was more dangerous than the one in which they found him." *Hernandez*, 897 F.3d 1125, 1133 (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000)). According to the SAC, Officer Lorenzen pinned Guy down in the middle of the second lane of a four-lane road. (SAC ¶ 21.) The detention occurred "in the early morning before sunrise," with lighting that reduced the visibility of the parties involved. (*Id.* ¶¶ 13, 20.) A reasonable fact finder can conclude from these facts that Plaintiff faced a higher risk of getting injured by a driver than he would have if he were not restrained by Officer Lorenzen in the middle of the road.

Defendants argue that Guy was already jaywalking a multi-lane road and thus Guy placed himself at the risk of getting hit by a car. But exercising common sense would make it obvious that a free-roaming jaywalker's ability to detect and avoid an oncoming vehicle driven within the set speed limit[2] is greater than that of a person pinned down on the road by a police officer kneeling on his back. Further, the Ninth Circuit has rejected a similar

---

[2] The SAC alleges that the driver of the SUV is believed to have followed the speed limit. (SAC ¶ 28.)

argument in *Hernandez*. The facts alleged in that case, among others, were that the attendees of a rally in favor of then-Presidential candidate Donald J. Trump were injured by violent anti-Trump protesters because the police officers directed the pro-Trump rally attendees towards the anti-Trump protesters. *Hernandez*, 897 F.3d at 1129–30 (9th Cir. 2018). The police officers argued that the rally-goers readily and knowingly exposed themselves to the risk of getting injured at the rally because of the heated political speech activity taking place throughout the entire area of the rally venue. *Id.* at 1135. The court rejected the officers' argument, reasoning that what mattered was that the officers' affirmative action of directing the rally-goers into the crowd of protesters exposed the individuals to danger that they would not have otherwise faced. *Id.* (collecting cases). Similarly, here, Officer Lorenzen's affirmative conduct of pinning Plaintiff down on the road created the danger that Plaintiff would not have otherwise faced: being placed in a position where it was impossible for him to avoid getting hit by an oncoming car.

The Court concludes that Plaintiff has sufficiently alleged the first prong of the state-created danger claim.

### ii.    Deliberate Indifference.

The second prong of the state-created danger claim requires Plaintiff to allege facts showing that Officer Lorenzen and other police officers acted with "deliberate indifference" to a "known or obvious danger." *Patel*, 648 F.3d at 971–72. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). "This deliberate indifference standard is also very different from gross negligence . . . because it requires that the defendant have actual knowledge of, or willfully ignore, impending harm." *Grubbs II*, 92 F.3d at 900. "The deliberate-indifference inquiry should go to the jury if any rational factfinder could find this requisite mental state." *Patel*, 648 F.3d at 974. The question is whether a rational factfinder could

- 10 -

conclude, based on the facts alleged in the SAC and reasonable inferences drawn from them, that Officer Lorenzen willfully ignored impending harm.

The Court finds instructive the Ninth Circuit's holding in *Wood*, where a police officer pulled over a car in a high crime area around 2:30 a.m. and arrested the driver. The officer left the female passenger alone in the high crime area, and she was subsequently raped. The Ninth Circuit held that a jury could conclude that the officer acted in deliberate indifference based on the allegation that the officer was aware of the area where the officer left the rape victim. *See Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989).

That the conduct involved here may amount to no more than negligence does not negate the possibility that "on the facts pleaded a reasonable jury could infer something more, a conscious contempt of the lives of others and thus a form of reckless indifference to a fundamental right." *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1081 (10th Cir. 2015) (Gorsuch, J.). In *Browder*, surviving family of a decedent killed in a traffic accident with a police officer brought a § 1983 action against the officer, alleging that the officer sped and ran the red light for no official purpose, subsequently crashing into the decedent and killing her. *Id.* at 1076. Then-Judge Gorsuch wrote for the panel and concluded that these allegations were enough to satisfy the heightened *mens rea* required for the plaintiff's substantive due process claim. *Id.* at 1081.

Here, the SAC alleges that Officer Lorenzen pinned Guy down in the middle of a multi-lane road, at the wee hours of the morning before sunrise, when Guy was not resisting or struggling against the Officer. (SAC ¶¶ 13, 21–23.) The crime of which Guy was suspected was vandalism to property (*id.* ¶ 14), and Guy alleges he did not pose an immediate threat to the safety of Officer Lorenzen or others (*id.* ¶ 60). Based on these alleged facts, and reasonable inferences drawn from them, a reasonable factfinder could conclude that Officer Lorenzen acted with deliberate indifference to the obvious danger that an oncoming vehicle posed to Guy.

Therefore, the Court finds that Plaintiff offered sufficient facts to state a plausible constitutional violation with regards to his Fourteenth-Amendment substantive due process rights. The first prong of the qualified immunity analysis is therefore satisfied.

### B.    Clearly Established Constitutional Right

The Court turns to the second prong of the qualified immunity analysis: a clearly established constitutional right. To determine whether the constitutional right was clearly established at the time of the conduct, courts ask whether its contours were "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 739 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[C]learly established law should not be defined at a high level of generality." *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (omitting internal quotation marks) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). The dispositive question is therefore "whether the violative nature of *particular* conduct is clearly established" in the specific context of the case. *Id.* (internal quotation marks and citation omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

There does not need to be "a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 740. The Supreme Court has made "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *accord Dean for & on behalf of Harkness v. McKinney*, 976 F.3d 407, 417 (4th Cir. 2020) ("That there is little precedent imposing liability under . . . specific circumstances does not necessarily mean that an officer lacks notice that his conduct is unlawful."), *cert. denied sub nom. McKinney v. Dean*, No. 20-1276, 2021 WL 2519132 (U.S. June 21, 2021).

Here, the Court examines whether clearly established law proves "beyond debate" that Guy had a substantive due process right that was violated by (1) Officer Lorenzen's restraint of Guy in the middle of the road, hence exposing him to the danger of getting injured by oncoming traffic; or (2) other officers' failure to render adequate medical aid to Guy after he was hit by the SUV. *Mullenix*, 136 S.Ct. at 309; *see also Martinez*, 943 F.3d 1260, 1275 ("To deny immunity, we must conclude that every reasonable official would have understood, beyond debate, that the conduct was a violation of a constitutional right."). The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted). The Court "begin[s] by looking to binding precedent from the Supreme Court or [the Ninth Circuit]." *Martinez*, 943 F.3d at 1275. If there is no binding precedent, the Court looks to "whatever decisional law is available . . . including decisions of state courts, other circuits, and district courts." *Id.* (quoting *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014)). "The precedent must be controlling—from the Ninth Circuit or the Supreme Court—or otherwise be embraced by a consensus of courts outside the relevant jurisdiction." *Id.* (omitting internal quotation marks) (quoting *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017)).

### 1. Officer Lorenzen

According to Plaintiff,

> [a] consensus of authority clearly establishes the liability of a state actor for exposing an individual to danger they would not otherwise have faced. Precedent in the Ninth Circuit and other Courts of Appeals gave Defendant Lorenzen fair notice that he could be held liable for affirmatively placing Mr. Guy in danger.

(Pl.'s Opp'n, ECF No. 12 at 8:6–10.)

"It is beyond dispute that in September 1998, it was clearly established that state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger she would not otherwise have faced." *Kennedy*, 439 F.3d

at 1066. Numerous decisions in this circuit have recognized this right in a variety of contexts: *Munger*, 227 F.3d at 1082 (involving the officers' ejection of a scantly-clothed, drunk patron into sub-freezing temperatures that led to the patron's death by hypothermia); *Wood*, 879 F.2d at 589 (involving the officers stranding a female passenger of a vehicle in a high-crime area after arresting the driver around 2:30 a.m., resulting in the passenger getting raped and attacked on her way home); *Kennedy*, 439 F.3d at 1055 (involving police officers who told the assailant with a known history of violence that his neighbor reported him of molesting her daughter, providing a but-for cause for the assailant's subsequent attack of the neighbor); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (involving police officers who responded to a medical 911 call but cancelled the request for paramedics and instead broke the patient's front door, placed him inside the house, locked the door, and left, after which the patient was found dead the next day); *Maxwell*, 708 F.3d at 1075 (involving officers who, in order to question the victim of a domestic violence, prevented the victim from being transported to a hospital in a timely manner, leading the victim to die from excessive bleeding).

To the extent that these cases do not arise from the precise context—in which an officer placed the detainee in danger by restraining the detainee face-down, in the middle of the road, in low-visibility conditions—that is not dispositive. "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *See Hope*, 536 U.S. at 741 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)); *see also Dean for & on behalf of Harkness*, 976 F.3d at 417. This "obviousness" principle was applied in the Supreme Court's recent decision in *Taylor v. Riojas*, 141 S. Ct. 52 (2020). There, the Supreme Court reversed the Fifth Circuit's holding that it was not clearly established that an inmate had a constitutional right not to be housed in cells teeming with feces for six days. *Id.* (vacating *Taylor v. Stevens*, 946 F.3d 211 (5th Cir. 2019)). The Supreme Court held that based on the obviousness of the inmate's right, and the general constitutional rule already identified in the decisional law, no reasonable

correctional officer could have concluded that the officers' conduct was constitutionally permissible. *Id.*

A Tenth Circuit decision authored by then-Judge Gorsuch also provides guidance:

> some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing. Indeed, it would be remarkable if the most obviously unconstitutional conduct should be the most immune from liability only because it is so flagrantly unlawful that few dare its attempt.

*Browder*, 787 F.3d at 1082–83 (citing *Northen v. City of Chicago*, 126 F.3d 1024, 1028 (7th Cir.1997)). Applying this principle, the court concluded it was clearly established that "an officer who kills a person while speeding at 60 miles an hour on surface streets absent any emergency and in violation of state law invites a Fourteenth Amendment claim," based on the already-established general constitutional rule that a private person's physical injury due to a police officer's intentional misuse of his vehicle can give rise to a viable due process claim. *Id.* at 1083 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 n.13 (1998)).

Here, the Court finds it apt to apply the same obviousness principle. The general constitutional rule established in this circuit is that state officials cannot affirmatively and with deliberate indifference place an individual in danger that the individual would not otherwise have faced. *See Kennedy*, 439 F.3d at 1066. It is strikingly obvious to any reasonable person that restraining a non-resisting, non-threatening person face-down in the middle of a multi-lane road constitutes an affirmative act made with deliberate indifference to the person's safety. In other words, it should have been obvious to any police officer who is not "plainly incompetent" or does not "knowingly violate the law" that pinning Plaintiff down with a knee on his back and thereby causing Plaintiff serious bodily injury from oncoming traffic violates the general constitutional rule in place. *See Malley*, 475 U.S. at 341 (delineating the scope of qualified immunity and excluding from it officers who are plainly incompetent or who knowingly violate the law). Thus, it was clearly

20cv2027

established that an officer invites a Fourteenth Amendment claim when the officer restrains a non-resisting, non-threatening person face down in the middle of the road, in the wee hours of the morning with reduced visibility, and thereby causes the person to get injured by oncoming traffic.

Therefore, the Court concludes that qualified immunity does not shield Officer Lorenzen from being held liable for Plaintiff's Fourteenth Amendment substantive due process claims (Seventh, Eighth, and Ninth Causes of Action).

### 2. Other Officers

As to Plaintiff's claim that other officers on the scene of the incident violated Guy's rights by failing to render aid after Guy was injured by the SUV, a precedent in this jurisdiction placed the officers on notice as early as 1986 that their conduct could constitute a constitutional violation. *See Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986) ("[D]ue process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital."). In *Maddox*, police officers took into custody a naked man suspected of having taken Phencyclidine (PCP). *Id.* at 1411. The officers placed the man in handcuffs and put him in the rear of the car, and when the man became belligerent, the officers stopped on the freeway to reposition him. *Id.* The man resisted, forcing an officer against a guardrail that overlooked a steep freeway embankment, and the officer subdued the man by applying a chokehold. *Id.* The man remained still during the rest of the ride to the hospital, and when the police car reached the hospital, the officers had difficulty finding a pulse. *Id.* The officers were trained to use CPR but failed to do so, and instead took him to a jail ward in the hospital, where the decedent passed away.

This action arises from a context similar to *Maddox*. The Court finds that it was clearly established that the officers' failure to administer appropriate aid or intervention

20cv2027

after the detainee was injured while in police custody gives rise to a substantive due process claim.

Because both prongs of the qualified immunity analysis are satisfied, the Court concludes that qualified immunity is not applicable to Plaintiff's substantive due process claims against Officer Lorenzen and the Doe Officers who were on the scene of the incident.

### C. Conclusion

The Court dismisses Plaintiff's Fifth Cause of Action for unreasonable detention or arrest for failure to state a claim. The Court denies Defendants' qualified immunity defense at the pleading stage.

## II. Municipal Liability

Defendants seek to dismiss Plaintiff's Complaint against the City of San Diego on the basis that Plaintiff fails to state municipal liability.

Cities, counties, and other local government entities may be held liable for claims under 42 U.S.C. § 1983. *Monell v. New York City Dept of Social Servs.*, 436 U.S. 658 (1978). The local government entity may not be held vicariously liable under Section 1983 simply based on allegedly unconstitutional acts of its employees. *Jackson v. Barnes*, 749 F.3d 755, 762 (9th Cir. 2014). Instead, a plaintiff asserting municipal liability under *Monell* "must establish that 'the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered.'" *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (quoting *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir.2007)). "'[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986) (plurality)).

- 17 -

A policy, custom, or practice may be established in three ways: (1) by showing "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *See Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)).

Allegations about government policy, custom, or practice "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* at 637 (quoting *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011)). As a court in this district explained:

> After *Iqbal*, "[a]llegations of *Monell* liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur."

*Koistra v. Cnty. of San Diego*, No. 16cv2539-GPC(AGS), 2017 WL 6344819, at *4 (S.D. Cal. Dec. 12, 2017) (quoting *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010)).

The Court construes Plaintiff's SAC as alleging all three theories under which municipal liability may arise—longstanding practice or custom, failure to train, and ratification by a final decisionmaker.

//

## A. Policy, Practice, or Custom

A municipality's "'official policy' often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). *Monell* liability may also attach to longstanding practice or custom "that has not been formally approved by an appropriate decisionmaker . . . on the theory that the relevant practice is so widespread as to have the force of law." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).

To establish municipal liability under the "longstanding practice or custom" theory, the plaintiff must plead facts sufficient to show the practice is so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). In general, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir. 1989) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)).

Reading the SAC in the light most favorable to Plaintiff, the Court construes the SAC as alleging that the City maintained a deficient policy, custom, or practice as to (1) hiring, investigating, reviewing, and disciplining police officers; (2) keeping procedural safeguards regarding arrests of nonviolent offenders; and (3) conspiring to give false accounts of police misconduct. (SAC ¶¶ 154a–i.) The rest of Plaintiff's allegations involve failure-to-train or final-decisionmaker theories of municipal liability, which are discussed separately in later parts of this opinion. *See infra* Part II.B–C.

### 1. Deficient Hiring, Investigation, Review, and Discipline

The SAC alleges that the City hired and retained police officers, including Lorenzen, who had known propensities to abuse their power and mistreat the citizens. (SAC ¶ 154b.)

- 19 -

However, the SAC offers no facts that would allow the Court to draw a plausible inference that Lorenzen and the other officers had such abusive propensities or that the City knowingly hired them. Conclusory allegations are not enough for the Court to find that the City had a policy, practice, or custom of deficient hiring practices.

The SAC also alleges that the City maintained a deficient policy, practice, or custom of reviewing and disciplining officer misconduct. In support of this claim, Plaintiff alleges that officers "were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection to the incident causing Guy's injuries." (SAC ¶ 153.) "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. Here, the allegation is limited to the City's handling of a single incident involving Plaintiff. Such a standalone incident is not enough to support a plausible claim that the alleged practice or custom was so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *See Trevino*, 99 F3d at 918.

## 2.  Omission of Procedural Safeguards

Plaintiff argues that the City lacked the procedural safeguards (1) "for responding to reports of vandalism of property"; (2) "for detention of persons who pose no immediate threat of serious harm to the officers or any members of the public"; and (3) for "not placing detainees in the way of known or obvious danger." (SAC ¶ 154d.) "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *see also Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1997) (holding that a municipality may be held liable "if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights"). An example of a successfully pleaded *Monell* claim based on the policy of inaction can be found in *Mendoza v. Cnty. of San Bernardino*, No. EDCV 19-1056 JGB (SHKx), 2020 WL 3884905 (C.D. Cal. May 1, 2020). There, the

- 20 -

survivors of a decedent-inmate filed a complaint, alleging that the defendant county lacked procedural safeguards to prevent the inmates from committing suicide while in the county's custody. Specifically, the complaint alleged that the county had not implemented procedures to monitor inmates with identified risk of committing suicide, where those procedures were later included in a consent decree that was entered into months after the decedent-inmate's suicide. *Id.* at *4. Based on that allegation, among others, the court found that the plaintiffs plausibly stated "a claim of a municipal policy or custom of failing to monitor and/or conduct safety checks for suicidal inmates." *Id.*

To state a claim of *Monell* liability based on a policy of inaction or omission, a plaintiff must show (1) a constitutional violation, (2) the City's deliberate indifference to the plaintiff's constitutional right in not instituting the procedural safeguard, and (3) causation linking the lack of procedural safeguard and the alleged harm. *Tsao*, 698 F.3d at 1143. The Court focuses the analysis on the second element: deliberate indifference. "[T]he deliberate indifference standard for municipalities is always an objective inquiry." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). To show deliberate indifference, Plaintiff must demonstrate that the City of San Diego was on notice that the lack of the policies "would likely result in a constitutional violation." *Tsao*, 698 F.3d at 1145 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1186 (9th Cir. 2002), *limited by Castro*, 833 F.3d at 1076 (holding that an objective standard applies to deliberate indifference analysis and overruling any contrary interpretations of *Gibson*)). Merely identifying the lack of a policy in a certain area, on its own, is not enough to show deliberate indifference, and neither is simply invoking deliberate indifference in a conclusory manner. *See*, *e.g.*, *Chen v. D'Amico*, No. C16-1877JLR, 2018 WL 1508909 at *4 (W.D. Wash. Mar. 27, 2018). Here, Plaintiff does not offer any facts that would allow the Court to draw a plausible inference that the City of San Diego had the requisite notice that the lack of a policy on the areas identified by Plaintiff would likely result in a constitutional violation. Thus, the SAC does not plausibly state that the City acted with deliberate indifference.

The Court concludes that Plaintiff's claim for *Monell* liability based on a policy of inaction or omission is not plausible on its face.

### 3. Conspiring to Give False Accounts

According to the SAC, the City of San Diego maintained a policy, practice, or custom of "[c]onspiring to give false accounts of the incident to attempt to justify the unreasonable detention and use of excessive force by LORENZEN and other involved SDPD officers." (SAC ¶ 154h.) Plaintiff argues that the following allegations in the SAC support this claim:

> 32. Following the accident SDPD caused a police officer who was not at the scene of the horrific collision, before, during or immediately after the collision to prepare the police report.

> 33. The police report was falsified in that it does not accurately reflect the events leading up to, during, or following the incident.

(*Id.* ¶¶ 32–33.) These allegations are conclusory. The SAC does not say what aspects of the incident report were inaccurate. Moreover, not all inaccuracies are the product of lies; inaccuracies may also result from errors or mistakes. The SAC does not include any non-conclusory allegations that the SDPD officers fabricated the incident report. In sum, Plaintiff does not state a plausible claim that the incident report contained inaccuracies, much less that SDPD officers conspired to fabricate the report.

Further, Plaintiff does not allege that any false accounts given by the police officers amounted to more than a single incident involving Plaintiff's matter. A single incident does not give rise to a plausible inference of widespread practice or custom necessary to establish municipal liability. *See Trevino*, 99 F.3d at 918.

Based on the above, the Court concludes that Plaintiff's SAC does not plausibly state that the City maintained a written policy or a widespread custom or practice that would justify the finding of municipal liability.

### B. Failure to Train

A municipality's failure to train its employees can supply the grounds for *Monell* liability when the failure amounts to deliberate indifference to the need to train the employees. *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014). To establish deliberate indifference, Plaintiff must show that:

> in light of the duties assigned to specific officers or employees, the need for more or different training [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.

*Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). To show deliberate indifference, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees." *See id.* Such a pattern is required unless "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64 (construing *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)); *accord Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).

Here, Plaintiff's SAC alleges that the City did not adequately train the officers about "detentions, arrest, use of force, and protection of those in their custody from harm, and not placing detainees in the way of known or obvious danger," among others. (SAC ¶¶ 154b, 154d, 154i, 168.) The SAC states, in a conclusory manner, that the failure to train was the result of the City's "deliberate indifference" and constituted "the moving force" behind the deprivation of Plaintiff's rights. (*Id.* ¶ 168.) Merely reciting the elements of municipal liability is not enough to satisfy the pleading standard required under Rule

12(b)(6). *AE ex rel. Hernandez*, 666 F.3d at 637. The SAC lacks facts that would show that the City's existing training was inadequate or that the unconstitutional consequences of the alleged failure to train was patently obvious. *See, e.g.*, *Chen*, 2018 WL 1508909, at *5 (reaching a similar conclusion where the plaintiff offered no facts "giving rise to the plausible inference that the [municipality]'s existing training and supervisory programs [were] deficient").

Based on the above, the Court concludes that Plaintiff does not plausibly state a claim of municipal liability under the failure-to-train theory.

## C.  Ratification by a Final Decisionmaker

A *Monell* claim based on a ratification theory applies where a municipal policy maker (1) has knowledge of the subordinate's alleged conduct, (2) approves of the subordinate's decision and the basis for it, and (3) makes a conscious, affirmative choice to ratify the conduct. *See Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), *vacated on other grounds by*, *Brosseau v. Haugen*, 543 U.S. 194 (2004); *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

Here, the SAC alleges nothing more than a mere recitation of the elements of a ratification theory of municipal liability:

> a final policymaker or managerial or supervisorial employee, acting under color of law, who had final policymaking authority concerning the acts of LORENZEN and DOES 1–25, ratified the acts of these defendants and the bases for them. Upon information and belief, the final policymaker or managerial or supervisorial employees sued as Does 26–50, knew of and specifically approved of the acts of LORENZEN and DOES 1–25.

(SAC ¶ 176.) These allegations are conclusory and are not enough to state a plausible *Monell* claim. *See, e.g.*, *Sweiha v. Cnty. of Alameda*, No. 19-CV-03098-LB, 2019 WL 4848227, at *5 (N.D. Cal. Oct. 1, 2019) (dismissing ratification theory of municipal liability, upon finding that a similar allegation was conclusory).

- 24 -

In sum, Plaintiff's SAC does not plausibly state a municipal liability claim against the City of San Diego.

### III. State-Law Claims

Defendants argue that section 945.3 of the California Government Code bars Plaintiff from bringing his state-law causes of action. That statute provides in relevant part:

> No person charged . . . [with] a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer **based upon** conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.

Cal. Gov. Code § 945.3 (emphasis added). The second part of the statute provides for tolling of the statute of limitations during the period that the criminal charges are pending before a state superior court. *Id.* The purpose behind the legislation of section 945.3 has been understood "'to eliminate the use of civil damage complaints as plea bargaining levers' and possibly 'to prevent use of civil false arrest suits as a device to inquire into prosecutorial materials and investigative information while the criminal charge is pending.'" *McMartin v. Cnty. of Los Angeles*, 202 Cal. App. 3d 848, 855 (Ct. App. 1988) (quotation marks omitted) (quoting *Mohlmann v. City of Burbank*, 179 Cal. App. 3d 1037, 1042 (Ct. App. 1986)).

For section 945.3 to apply, the action for money or damages must be "based upon" the challenged conduct. Cal. Gov. Code § 945.3. Courts "ha[ve] interpreted § 945.3 'based upon' language to mean 'because of.'" *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 64 n.14 (2007)). Based on this interpretation, "§ 945.3 tolls a civil action when the 'but for' cause of the claim is the 'conduct of the peace officer.'" *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. at 350 (2013)).

Here, Plaintiff has a pending criminal prosecution against him for charges of resisting a police officer (Cal. Penal Code §§ 69, 148.10) and vandalism (Cal. Penal Code § 594).[3]  Plaintiff's causes of action for negligence, use of force, battery, and violation of the Bane Act challenge the manner in which the arrest was made.  These claims have the police officers' conduct as the "but for" cause of the claims.  Thus, section 945.3 bars Plaintiff's First, Second, Third, Fourth, and Sixteenth Causes of Action during the pendency of the criminal action against Plaintiff.

The same holds for Plaintiff's state-law claims against the City of San Diego: negligent hiring and supervision (Eleventh Cause of Action) and failure to train (Twelfth Cause of Action).  Without challenging the conduct by Officer Lorenzen or other SDPD officers, Plaintiff cannot plausibly state that the City of San Diego acted negligently or failed to train the officers, thereby causing Plaintiff to be injured.  *See Love v. Motion Indus., Inc.*, 309 F. Supp. 2d 1128, 1138 (N.D. Cal. 2004) (listing causation as an element of a negligent supervision claim); *cf. Lockett*, 977 F.3d at 741–42 (holding that the petitioner's *Monell* claim was "'based upon conduct of the peace officer[s]' within the meaning of § 945.3" because to prove that the municipality held the alleged practice or custom giving rise to *Monell* liability, the petitioner must prove unconstitutional conduct of the officers).

The Court concludes that section 945.3 of the California Government Code bars Plaintiff from bringing the state-law causes of action while the state criminal action is pending against him.   The Court thus dismisses without prejudice Plaintiff's state-law claims.  Because section 945.3 tolls the statute of limitations for the state-law claims until the date of judgment and sentence, Plaintiff may refile his state-law claims after that point

---

[3] The Court takes judicial notice of the Complaint-Felony filed on October 8, 2019 in the San Diego Superior Court, Court No. CD283577 in the case of *People of the State of California v. Deovante Leshampel Guy* (RJN Ex. 1, ECF No. 6-2 at 5–7), as facts capable of ready determination.  *See* Fed. R. Evid. 201(b); *Peyton v. Burdick*, No. 1:07-CV-00453 LJO TAG, 2008 WL 1776450, at *3 & n.2 (E.D. Cal. Apr. 18, 2008) (taking judicial notice of state court docket indicating the crime the plaintiff was charged with and the related trial date).

in time. *See McAlpine v. Alameda County Superior Court*, 209 Cal. App. 3d 1, 7 (1989) (holding that "the Legislature intended the term 'pending' to include all proceedings leading to judgment" for purposes of Cal. Gov. Code § 945.3).

## IV.  *Younger* Abstention

Defendants argue that the Court should stay the claims that survive their motion to dismiss under *Younger v. Harris*, 401 U.S. 37 (1971), until the state criminal case against Guy is resolved.   In *Younger*, the Supreme Court held that, absent extraordinary circumstances, federal courts should abstain from enjoining ongoing state criminal proceedings.   *Id.* at 53.   The *Younger* doctrine rests primarily on the consideration of comity, which "preserve[s] respect for state functions such that the national government protects federal rights and interests in a way that will not 'unduly interfere with the legitimate activities of the States.'"   *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004) (quoting *Younger*, 401 U.S. at 43–45).   While *Younger* itself involved an action to enjoin a state criminal prosecution, courts have held that *Younger* extends to requests for declaratory relief, *see Samuels v. Mackell*, 401 U.S. 66, 72 (1971), and to § 1983 actions for damages, *see Gilbertson*, 381 F.3d at 979.

Courts have held that "the *Younger* abstention defense is waived when an action is removed from state court and federal jurisdiction is thereby invoked by the defendant." *Cummings v. Husted*, 795 F. Supp. 2d 677, 692 (S.D. Ohio 2011) (collecting cases).   As explained by the court in *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003), where municipal defendants are in federal court because of their own removal of an action to federal court, "[i]t would be fundamentally unfair to permit State Defendants to argue that this Court must abstain from hearing the case after they voluntarily brought the case before this Court." *Id.* at 285 (citing *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002)).   "To do so would permit defendants effectively to prevent plaintiffs from pursuing their federal claims in any forum." *Id.*

- 27 -

1   Those considerations are applicable here.  Plaintiff filed his action in state court, but
2   the San Diego Defendants removed the matter to federal court.  (ECF No. 1.)  By their
3   removal, the San Diego Defendants waived abstention.  Therefore, the Court declines to
4   stay the present action.

6   ## V.    Plaintiff's Request to Amend the Pleading

7   In his Opposition, Plaintiff requests an opportunity to amend his pleading to cure
8   any deficiencies found by this Court.  (Pl.'s Opp'n at 24:14–15.)  "In general, a court should
9   liberally allow a party to amend its pleading."  *Sonoma Cnty. Ass'n of Retired Emps. v.*
10  *Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing Fed. R. Civ. P. 15(a)); *see also*
11  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) ("A district
12  court 'shall grant leave to amend freely 'when justice so requires.'").  "Courts may decline
13  to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory
14  motive on the part of the movant, repeated failure to cure deficiencies by amendments
15  previously allowed, undue prejudice to the opposing party by virtue of allowance of the
16  amendment, [or] futility of amendment[.]'"  *Sonoma Cnty.*, 708 F.3d at 1117 (alteration in
17  original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

18  In light of the liberal policy favoring amendment, the Court finds granting Plaintiff
19  leave to amend the pleading is appropriate.  This is the first time Plaintiff will have the
20  opportunity to amend his pleading following the Court's guidance.  Defendants do not
21  make a strong showing of undue delay, bad faith, or dilatory motive on the part of Plaintiff.

22  The Court thus **GRANTS** Plaintiff leave to amend his pleading.  Any amended
23  pleading must be filed **on or before July 16, 2021**, in compliance with this Court's
24  Standing Order.  *See* Standing Order of the Hon. Cynthia Bashant for Civil Cases ¶ 4.
25  //
26  //
27  //
28  //

- 28 -

## CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.  (ECF No. 6.)

The Court **DENIES** Defendants' request to stay this action.

The Court **GRANTS** Plaintiff leave to amend his pleading.  Any amended pleading must be filed **on or before July 16, 2021**, in compliance with this Order.

**IT IS SO ORDERED.**

DATED: July 2, 2021

Hon. Cynthia Bashant
United States District Judge