Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Lisa Y. An, State Bar No. 242918
E-Mail: lan@hurrellcantrall.com
Joseph K. Miller, State Bar No. 245685
E-Mail: jmiller@hurrellcantrall.com
HURRELL CANTRALL LLP
725 S. Figueroa Street, Suite 3800
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants MATTHEW LORENZEN and CITY OF SAN DIEGO

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEOVANTE L. GUY, BY AND THROUGH GUARDIAN AD LITEM FOR DEOVANTE GUY, QUINTASIA WALKER,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW LORENZEN, an Individual; THE CITY OF SAN DIEGO, A governmental entity; PAUL MACINTYRE, An Individual; CHRISTOPHER SENIOR, An Individual; CORY SIMS, An Individual, and DOES 4-50,<br><br>Defendants. | CASE NO. 3:20-CV-02027-BAS-BLM<br><br>**DEFENDANTS' TRIAL BRIEF REGARDING THE PURPOSE-TO-HARM TEST AND QUALIFIED IMMUNITY**<br><br>[Assigned to Judge Cynthia Bashant, Courtroom "4B"]<br><br>Action Filed:   10/15/2020<br>Trial:               09/26/2023 |

Defendants MATTHEW LORENZEN and CITY OF SAN DIEGO, by and through their attorneys, hereby submit their trial brief :

**I.   DEFENDANTS' CONTENTIONS OF FACT**

On February 28, 2019, at approximately 4:45 a.m., Plaintiff Deovante L. Guy entered the 7-11 convenience store located at 3185 Midway Drive in San Diego, California, wielding a 3 to 4-foot metal pipe, which he waived near a store customer

standing in front of the register.  Upon leaving the store, Plaintiff kicked the glass door twice and shattered the glass.  The store clerk called 911 to report the incident.

City of San Diego Police Department Officer Defendant Matthew Lorenzen ("Officer Lorenzen"), along with three other officers, were dispatched to respond to the call.  Dispatch provided a description that Plaintiff was carrying a metal pipe and that he had attacked the store clerk with the metal pipe the week prior.  Dispatch further noted Plaintiff may be under the influence of a controlled substance.

City of San Diego Police Department Officer Paul MacIntyre observed a suspect, matching the description provided by dispatch, at the northeast corner of Rosecrans Street and Midway Drive.  Officer MacIntyre illuminated his spot light and turned north on Rosecrans Street.  Officer Lorenzen arrived southbound on Rosecrans Street with his emergency lights illuminated.  Plaintiff ran across Rosecrans Street behind Officer Lorenzen's vehicle.  Officer MacIntyre illuminated his emergency lights and proceeded north on Rosecrans to make a u-turn onto southbound Rosecrans Street.  Officer Lorenzen exited his vehicle parked in the southbound lanes on Rosecrans Street and pursued Plaintiff on foot in the westerly direction Plaintiff had run.  In dispatch audio, Officer Lorenzen is heard giving Plaintiff instructions to get on the ground.

According to witnesses, Carol Maniglia and Nicholas Heim, who were stopped in the southbound lanes, Plaintiff ran away from Officer Lorenzen back across the southbound lanes of Rosecrans Street where he tripped and fell.  According to Ms. Maniglia, Officer Lorenzen also fell and then attempted take Plaintiff in custody.  Mr. Heim witnessed Plaintiff and Officer Lorenzen wrestling in the street.  Within mere seconds, Plaintiff and Officer Lorenzen were struck by a speeding white sports utility vehicle, driven by Annie Brady, while Plaintiff was struggling with Officer Lorenzen.  Ms. Brady's vehicle struck and severely injured both Plaintiff and Officer Lorenzen.

A third witness, Tanya Daley-Torres, who was driving in the northbound lanes, stated that she observed Officer Lorenzen grab Plaintiff's shoulder and take Plaintiff

to the ground in the middle of the street.  Ms. Daley-Torres also stated that Plaintiff did not resist Officer Lorenzen at anytime.  Mr. Heim and Ms. Maniglia were in the southbound lanes closer to Plaintiff and Officer Lorenzen at all times.

Importantly, Ms. Brady did not yield to Officer Lorenzen's police vehicle with its emergency lights illuminated.  Ms. Brady further ignored other stopped, illuminated vehicles in the roadway and the presence of other illuminated police vehicles in the area.  Ms. Brady changed lanes to avoid another vehicle stopped in the number three lane immediately before she struck Officer Lorenzen and Plaintiff.  CCTV video also confirms further that horns were honked as Ms. Brady approached, but she failed to yield to any of the warnings present before her.

The shopping center surveillance video confirms that the encounter between Plaintiff and Officer Lorenzen lasted less than **16 seconds** in total from the time that Officer Lorenzen is observed exiting his vehicle to the moment Plaintiff and Officer Lorenzen are struck by Ms. Brady's vehicle.

City of San Diego Police Department Officers Christopher Senior and Cory Sims were in their patrol car facing Rosecrans St. across from Plaintiff and Officer Lorenzen.  Officer Senior briefly observed Plaintiff struggling with Officer Lorenzen before Ms. Brady's vehicle struck them.  Officer Sims immediately called dispatch to send medics.  Officers Sims, Senior and MacIntyre were on scene within 20 seconds of the impact.  Officer Senior checked Plaintiff.  Officer Sims checked Officer Lorenzen.  Additional officers arrived on scene and provided assistance.  Paramedics arrived at Plaintiff's side within approximately three minutes after the time of the collision. Mr. Guy was transported by the first ambulance to arrive.  Officer Lorenzen was transported after Mr. Guy in the second ambulance to arrive.

## II. <u>PLAINTIFF'S CLAIMS</u>

Plaintiff asserts two federal causes of action under 42 U.S.C. § 1983:  1) Unreasonable Search and Seizure - Excessive Force under the Fourth Amendment (42 U.S.C. § 1983); 2) Fourteenth Amendment – State Create Danger (42 U.S.C. § 1983).

DEFENDANTS' TRIAL BRIEF RE: PURPOSE-TO-HARM TEST AND QUALIFIED IMMUNITY

Under the Fourth Amendment, an officer must use objectively reasonable force, taking into account all of the circumstances confronting the officer at the time of the subject incident. *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1095 (9th Cir. 2006); *Graham v. Connor* (1989) 490 U.S. 386, 397. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See *Terry v. Ohio* (1968) 392 U.S. 1, 20-22. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Graham, supra,* 490 U.S. at 397.

Further, the substantive due process analysis under the Fourteenth Amendment is not appropriate if a plaintiff's claim is "covered by" the Fourth Amendment. *County of Sacramento v. Lewis* 523 U.S. 833, 843-844 (1998).

## III. THE PURPOSE-TO-HARM TEST IS THE APPLICABLE TEST FOR PLAINTIFF'S FOURTEENTH AMENDMENT STATE CREATED DANGER CLAIM

Negligence is not sufficient for due process claims. *Daniels v. Williams* 474 U.S. 327 (1986); *Davidson v. Cannon* 474 U.S. 344 (1986). To prevail on his Fourteenth Amendment claims, Plaintiff must show that Officer Lorenzen's conduct "shocks the conscience." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022); see also *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Two tests are used to decide whether an officer's conduct "shocks the conscience": the deliberate-indifference test or the purpose-to-harm test. *Id.* at 1056. The decision of which test to apply depends on whether the officer(s) had time to deliberate their conduct. *Ochoa, supra,* 26 F.4th at 1056.

The deliberate-indifference test applies if the situation at issue "evolve[d] in a time frame that permits the officer to deliberate before acting." *Ochoa, supra,* 26 F.4th at 1056. Deliberation is not possible if the officers "encounter[ed] fast paced

circumstances presenting competing public safety obligations." *Id.*

The purpose-to-harm test applies if the situation at issue "escalate[d] so quickly that the officer [had to] make a snap judgment." *Ochoa, supra,* 26 F.4th at 1056. The purpose-to-harm test requires "a more demanding showing that [the officers] acted with a *purpose to harm* [plaintiff] for reasons unrelated to legitimate law enforcement objectives." *Id.* Legitimate objectives include "arrest, self-protection of the public." *Id.* Illegitimate objectives include any ulterior motives for using force against the suspect such as bullying, retaliation, or when an officer uses force against a clearly harmless or subdued suspect. *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018). Here, the purpose-to-harm test should be applied to Plaintiff's Fourteenth Amendment claim because shopping center surveillance video confirms that the encounter between Plaintiff and Officer Lorenzen lasted less than **16 seconds** in total from the time that Officer Lorenzen is observed exiting his vehicle to the moment Plaintiff and Officer Lorenzen are struck by Ms. Brady's vehicle. The jury should be instructed regarding the purpose-to-harm test and that deliberate indifference does not apply to Plaintiff's case.

## IV. OFFICER LORENZEN IS PERMITTED TO SEEK A RULING ON QUALIFIED IMMUNITY BY THE COURT AFTER THE CLOSE OF PLAINTIFF'S CASE

Qualified immunity is a question of law, not a question of fact. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9thCir. 2008). When "historical facts material to the qualified immunity determination are in dispute" the district court should submit the factual dispute to a jury. *Torres*, 548 F.3d at 1211. Only the judge can decide whether a particular constitutional right was "clearly established" once any factual issues are resolved by a fact finder. *See Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017). "Though we may excuse the reasonable officer for … a mistake, it sometimes proves necessary for a jury to determine first whether the mistake, was, in fact, reasonable." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168

(9thCir. 2013) (citations omitted); *see also Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (explaining that if determining reasonableness of officer's action depends on disputed issues of fact—i.e., which version of facts is accepted by jury—this is question of fact best resolved by jury). When a case proceeds to trial, qualified immunity is no longer an "immunity from suit"; rather, it effectively becomes a defense. *Torres*, 548 F.3d at 1211 n. 9.

Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct." *Lane v. Franks*, 573 U.S. 228, 243 (2014). The qualified immunity analysis consists of two prongs: (1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and (2) whether that right was clearly established at the time the defendant acted. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020).

When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity. *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017); *see also Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019). The issue should be preserved in a Rule 50(a) motion at the close of evidence and then revisited, if appropriate, after the verdict in a Rule 50(b) motion. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009) ("When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict."); *see also A.D. v. Cal. High. Patrol*, 712 F.3d 446, 452 n.2 (9th Cir. 2013) (noting that defendant preserved his position on qualified immunity—renewed in Rule 50(b) motion after trial—by bringing Rule 50(a) motion for JMOL before case was submitted to jury). Consistent with this case law, there may be particular cases in

which a special verdict on a discrete fact is warranted in order to resolve a qualified immunity claim. But a special verdict is not required in every qualified immunity case involving disputed issues of material fact for the purpose of evaluating a post-verdict qualified immunity defense. *See Lam v. City of San Jose*, 869 F.3d 1077, 1086 (9th Cir. 2017).

Here, a factual dispute exists preventing the Court's ruling on qualified immunity due to conflicting witness statements. Defendants request the Court to instruct the jury to make appropriate special findings to resolve the factual dispute, so that the Court can rule on the issue of qualified immunity with respect to Officer Lorenzen.

## V. CONCLUSION

Defendants request the Court to instruct the jury accordingly regarding the purpose-to-harm test to determine whether Officer Lorenzen's conduct "shocks the conscience." Defendants also request the Court to instruct the jury to make special finding to resolve the existing factual dispute and permit Defendant Lorenzen to move under Rule 50(a) & (b) and further brief and argue for a finding qualified immunity after the closed of Plaintiff's case and special findings by the jury.

DATED: Augus 28, 2023           HURRELL CANTRALL LLP

By: ___*/s/ Joseph K. Miller*___
THOMAS C. HURRELL
LISA Y. AN
JOSEPH K. MILLER
Attorneys for Defendants MATTHEW
LORENZEN and CITY OF SAN DIEGO

7
DEFENDANTS' TRIAL BRIEF RE: PURPOSE-TO-HARM TEST AND QUALIFIED IMMUNITY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hurrell Cantrall LLP
725 S. Figueroa Street, Suite 3800
Los Angeles, California 90071
Telephone (213) 426-2000